Elaine A. BRADY, Relator,

v.

**FOURTEENTH COURT OF APPEALS, Respondent.**

No. C-9538.

Supreme Court of Texas.

June 20, 1990.

Rehearing Overruled June 20, 1990.

Glenn A. Diddel, III, Houston, for relator.

Harold D. Hammett, Ft. Worth, W. Troy McKinney, Joe H. Reynolds, Houston, for respondent.

### OPINION ON MOTION FOR REHEARING

RAY, Justice.

Our original opinion is withdrawn and the following substituted.

In this original proceeding relator seeks writ of mandamus directing the court of appeals to withdraw the writ of mandamus it issued in an original proceeding. Because the resolution of the issues presented to the court of appeals required factual determinations that could not properly be made by an appellate court in an original proceeding, we hold the court of appeals abused its discretion and conditionally grant the writ.

Relator Elaine A. Brady is the sole candidate in the Democratic primary for Place One on the First Court of Appeals. Appropriate Democratic Party officials certified her after she had submitted her application with the $2,000 filing fee and accompanying documentation to satisfy the applicable sections of the Texas Election Code.[1] The documentation included several pages of petitions to have her placed on the ballot. The petitions bore a combined total of 302 signatures.

The incumbent justice and sole candidate in the Republican primary for Place One on the First Court of Appeals is the Honorable D. Camille Dunn. On January 24, 1990, Dunn filed an original mandamus action in the Fourteenth Court of Appeals to compel Robert Slagle in his capacity as Chairman of the Texas Democratic Executive Committee and local Democratic Party officials to remove Brady's name from the Democratic primary ballot. Dunn alleged Brady's petitions did not comply with the Election Code's sections 141.062[2], 141.063[3], and 141.065.[4] Dunn claimed that (1) the

---

1. Subsection 172.021(e) of the Election Code provides in part: "A candidate for an office specified by Section 172.024(a)(8) ... who chooses to pay the filing fee must also accompany the application with a petition that complies with the requirements prescribed for the petition authorized by Subsection (b), except that the minimum number of signatures that must appear on the petition required by this subsection is 250." Tex.Elec.Code Ann. § 171.021(e) (Vernon Supp.1990). Subsection (b) requires an application to be accompanied by either the appropriate filing fee or a petition that satisfies the requirements prescribed by section 141.062. See Tex.Elec.Code Ann. § 171.021(b) (Vernon 1986). Subsection 172.024(a)(8) sets a filing fee of $2,000.00 for "chief justice or justice of a court of appeals that serves a court of appeals district in which a county with a population of more than 850,000 is wholly or partly situated." Tex.Elec.Code Ann. § 172.024(a)(8) (Vernon Supp.1990). For the text of sections 141.062 and 141.063 of the Election Code, see notes 2 and 3 *infra*.

2. Tex.Elec.Code Ann. § 141.062 (Vernon 1986):
   (a) To be valid, a petition must:
   (1) be timely filed with the appropriate authority;
   (2) contain valid signatures in the number required by this code; and
   (3) comply with any other applicable requirements for validity prescribed by this code.
   (b) A petition may consist of multiple parts.

3. Tex.Elec.Code Ann. § 141.063 (Vernon 1986):
   A signature on a petition is valid if:
   (1) except as otherwise provided by this code, the signer, at the time of signing, is a registered voter of the territory from which the office sought is elected or has been issued a registration certificate for a registration that will become effective in that territory on or before the date of the applicable election;
   (2) the petition includes the following information with respect to each signer:
   (A) the signer's residence address;
   (B) the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration;
   (C) the date of signing; and
   (D) the signer's printed name;
   (3) the part of the petition in which the signature appears contains the affidavit required by Section 141.065;
   (4) each statement that is required by this code to appear on each page of the petition appears, at the time of signing, on the page on which the signature is entered; and
   (5) any other applicable requirements prescribed by this code for a signature's validity are complied with.

4. Tex.Elec.Code Ann. § 141.065 (Vernon 1986):
   (a) Each part of a petition must include an affidavit of the person who circulated it stating that the person:

petitions did not have at least 250 signatures by registered voters because fifty-eight signers were not on the 1990 list of registered voters; (2) other signatures were invalid for failure to include complete addresses, correct voter registration numbers, the date, a printed name, and similar defects; and (3) the person who notarized Brady's application and 35 pages of petitions did not affix her stamp or seal. Dunn's record included an affidavit from the Harris County Tax Assessor certifying that 58 signers were not on the 1990 list of registered voters.

Brady, the real party in interest, responded with an affidavit also from the Harris County Tax Assessor showing 10 of the 58 challenged signers were in fact registered. Brady also included certified copies of voter registration records from the assessor's office to show that an additional 21 of the 58 were registered. Both Slagle and Brady contended that there were factual disputes that precluded mandamus relief in an original appellate court proceeding. Slagle urged that a literal and over-strict construction of the Election Code provisions that even failed to allow for correction of clerical mistakes would, as applied to Brady's situation, violate the First and Fourteenth Amendments to the United States Constitution. For the constitutional claim, Slagle cited *Pilcher v. Rains*, 853 F.2d 334 (5th Cir.1988), which cited *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and related cases.

The court of appeals issued the writ of mandamus to remove Brady's name from the primary ballot because the court concluded Brady only had 247 valid signatures, three short of the required 250. *Dunn v. Slagle*, 783 S.W.2d 953 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding). The

court of appeals concluded it was "undisputed" that 27 signers were unregistered. It further concluded the number of valid signatures was reduced below 250 because of omissions and incorrect registration numbers for several of the remaining signatures. Fifteen signatures were held invalid for incorrect registration numbers. Although the briefs of Slagle and Dunn addressed the federal constitutional issue, there is no mention of it in either the court's opinion or concurring opinion.

It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding. *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978); *Dikeman v. Snell*, 490 S.W.2d 183, 186–87 (Tex.1973). To adjudicate the controversy the court of appeals decided factual questions on inconsistent and conflicting affidavits and documents. The construction and application of the Election Code provisions Dunn asserts were violated, by the nature of the statutes involved, require a fully-developed factual record. It is impossible to construe the statutes as to factors such as the type and extent of clerical error that is permissible, without factual determinations of how many signers were in fact registered but gave incorrect voter registration numbers through clerical error. The number of registered voters who signed is a fact question that may not be determined by comparing registration names with signatures, because some signers may have used variants of their names (such as a middle name or omission of a maiden name) that would not be disclosed by simple comparison. The factual problems mentioned are not all-inclusive; the record in this case calls for factual determinations too numerous and varied to detail in this opinion.

(1) pointed out and read to each signer, before the petition was signed, each statement pertaining to the signer that appears on the petition;

(2) witnessed each signature;

(3) verified each signer's registration status; and

(4) believes each signature to be genuine and the corresponding information to be correct.

(b) If a petition contains an affidavit that complies with Subsection (a), for the purpose of determining whether the petition contains a sufficient number of valid signatures, the authority with whom the candidate's application is filed may treat as valid each signature to which the affidavit applies, without further verification, unless proven otherwise.

We have a further problem with the statutory construction questions in this case that requires a fully-developed factual record. Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with state and federal constitutions. *Greyhound Lines, Inc. v. Board of Equalization*, 419 S.W.2d 345, 348–49 (Tex.1967); Tex.Gov't Code Ann. § 311.021(1) (Vernon 1988). Applying this principle under the issues raised in this case requires factual determinations the court of appeals could not properly make in an original mandamus proceeding.

The Supreme Court has stated that the federal constitutional rights involved in a political party's process of selecting its nominee for an elective office include the fundamental rights of freedom of association and the right to cast an effective vote. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 787–88, 103 S.Ct. 1564, 1569–70, 75 L.Ed.2d 547 (1983); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). In particular, the freedom of association guaranteed by the First and Fourteenth Amendments includes the right to select a candidate who best represents the party's ideologies as decided by its members. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 1021, 103 L.Ed.2d 271 (1989).

When a political party questions the constitutionality of state statutes regulating the party's method of selecting a candidate, as applied to a particular office or candidate, the courts must employ a balancing test. The balancing test weighs the burden on the candidate or party against the compelling state interest the state must advance to justify the regulation. *Eu v. San Francisco County Democratic Central Committee*, 109 S.Ct. at 1019; *Tashjian v. Republican Party of Connecticut*, 479 U.S. at 213–15, 107 S.Ct. at 548–49; *Anderson v. Celebrezze*, 460 U.S. at 788–90, 103 S.Ct. at 1569–71; *Illinois State Bd. v. Socialist Workers Party*, 440 U.S. at 184, 99 S.Ct. at 990; *American Party of Texas v. White*, 415 U.S. 767, 780 & n. 11, 94 S.Ct. 1296, 1305 & n. 11, 39 L.Ed.2d 744 (1974). The party challenging the statute must produce evidence to establish facts to enable a court to assess the character and magnitude of the burden imposed on the party's First and Fourteenth Amendment rights by the election law's provisions. *Anderson v. Celebrezze*, 460 U.S. at 788–90, 103 S.Ct. at 1569–71; *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972). The party defending the statutory regulation must produce evidence that the burdens are necessary to further a compelling state interest. *Eu v. San Francisco County Democratic Central Committee*, 109 S.Ct. at 1021 & n. 15; *Tashjian v. Republican Party of Connecticut*, 479 U.S. at 217–18 & n. 8, 107 S.Ct. at 550–51 & n. 8; *Anderson v. Celebrezze*, 460 U.S. at 789, 103 S.Ct. at 1570. The party defending the statute must further show the statute is narrowly tailored to serve that compelling state interest. *Eu v. San Francisco County Democratic Central Committee*, 109 S.Ct. at 1019–20; *Anderson v. Celebrezze*, 460 U.S. at 806, 103 S.Ct. at 1579; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. at 185, 99 S.Ct. at 990.

In applying the balancing test, the Supreme Court has said a "court must resolve [a constitutional challenge to a state election law] by an analytic process that parallels its work in *ordinary litigation.*" *Anderson v. Celebrezze*, 460 U.S. at 789, 103 S.Ct. at 1570 (emphasis added). Application of a constitutional balancing test is particularly dependent on a fully-developed factual record. *See, e.g., Socialist Labor Party v. Gilligan*, 406 U.S. at 588, 92 S.Ct. at 1719; *Wisconsin v. Yoder*, 406 U.S. 205, 224–27, 92 S.Ct. 1526, 1537–39, 32 L.Ed.2d 15 (1972); *see generally* Pine, *Speculation and Reality: The Role of Facts in Judicial Protection of Fundamental Rights*, 136 U.Pa.L.Rev. 655, 658–68, 701–702 (1988). In *Pilcher v. Rains*, 853 F.2d 334 (5th Cir.1988), applying the balancing test

to several of the Texas Election Code provisions in controversy here, the Fifth Circuit Court of Appeals concluded that as applied to the Libertarian Party's candidates on the factual record there presented, the requirement that correct voter registration numbers be listed with the signatures was unconstitutional. Our point is not that the evidence and facts as to Brady would necessarily be the same, nor that the Fifth Circuit necessarily correctly applied the constitutional balancing test, but rather that resolving the constitutional issue necessarily requires factual determinations. It is perhaps possible that the evidence to support the various balancing test factors could be stipulated or otherwise be undisputed and presented in a form that would allow meaningful constitutional analysis. We need not decide that question because it clearly is not presented in this case. Here Slagle and Brady explicitly maintained that the facts were disputed and asserted their rights to develop fully the factual record. The court of appeals abused its discretion by adjudicating constitutional issues that necessarily dealt with disputed areas of fact.

Because the court of appeals issued the writ of mandamus in an original proceeding in which it could not properly make the factual determinations raised in the case, we hold the court of appeals abused its discretion. We conditionally issue the writ of mandamus directing the court of appeals to withdraw its writ and any related orders. The actual writ will issue only if the court of appeals fails to comply with this opinion. We overrule the motion for rehearing, and no further motion for rehearing will be entertained.

MAUZY, J., concurs.