6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00120-CV
______________________________



IN RE:
DALE WORKS





                                                                                                                                            
                 
Original Mandamus Proceeding





                                                                                                                                            
                                           


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross



O P I N I O N

          In this original proceeding, Dale Works seeks a writ of mandamus directing the trial
court to (1) withdraw an August 27, 2003, order denying Works' motion to disqualify
attorney Ben Franks as opposing counsel, (2) enter an order granting Works' motion to
disqualify Franks as opposing counsel, and (3) enter an order prohibiting Franks from
communicating any privileged information to the new counsel. Based on the record and
pleadings before us, and without hearing oral argument, we deny the petition.
I. Factual and Procedural Background
          Raymond and Delores Head married in 1996. On August 25, 1997, as they were
walking down a street in Texarkana, Texas, Raymond and Delores were struck from behind
by a car operated by Linda Burks, an employee of Budget Rent-A-Car. Raymond and
Delores sued both Budget Rent-A-Car and Burks (collectively "Budget") for injuries they
suffered in the accident. Franks represented both Raymond and Delores in the suit. 
According to Delores' testimony, Raymond's claims against Budget were resolved first, and
it was not until later that Delores settled her claims against the company. This, according
to Delores, resulted in two separate settlements: one for Raymond, and one for herself. 
          On Thursday, February 13, 2003, Raymond died. His survivors include Delores, two
daughters, Marla Hohner


 and Lori Tally, and a grandchild, Clayton Tally. In the copy of
the will submitted for probate, Raymond named Works as the executor of his estate. The
copy of the will seeks to devise Raymond's estate to his daughters and grandson, but
makes no provision for Delores. 
          Delores filed a contest to the will. Delores chose Franks, the attorney who
represented her in the suit against Budget, as counsel of record in the will contest. In
response, Works sought to have Franks disqualified on the basis that Franks' prior
representation of Raymond is adverse to Delores' claims against Raymond's estate. 
Works also announced his plan to call Franks as a material witness in its defense of the
will. Works contends Franks structured Raymond's and Delores' settlements separately
pursuant to a premarital agreement. Franks' knowledge of a premarital agreement,
according to Works, makes him an essential fact witness in the will contest. Should Works,
as executor of the estate, not be able to bring forth a copy of the premarital agreement,
and if the copy of the will submitted for probate is not approved by the probate court,
Works hopes to show that Delores and Raymond nonetheless had a premarital agreement
and that, therefore, Delores should receive none of Raymond's property that might
otherwise be considered community property in the event Raymond died intestate. 
          The trial court denied the estate's motion to disqualify Franks. Works now asks us
to disqualify Franks as Delores' counsel. 
II. The Applicable Standards
          A. Mandamus Relief 
          Mandamus will issue only when the mandamus record establishes (1) a clear abuse
of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and
adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994); Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Mandamus is an extraordinary remedy that
will issue only to correct a clear abuse of discretion or, in the absence of another statutory
remedy, when the trial court fails to observe a mandatory provision conferring a right or
forbidding a particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985). 
Mandamus may issue even on questions of first impression if, as a matter of law, the trial
court erred in its analysis and reached an erroneous legal conclusion. Huie v. DeShazo,
922 S.W.2d 920, 927-28 (Tex. 1996).
          B. Attorney Disqualification
          A party seeking to disqualify an attorney must show the existence of a prior attorney-client relationship "in which the factual matters were so related to the facts in the pending
litigation that it creates a genuine threat that confidences that were revealed to the former
attorney will be revealed by that attorney to its present adversary." In re Cap Rock Elec.
Coop., Inc., 35 S.W.3d 222, 230 (Tex. App.‒Texarkana 2000, orig. proceeding). This
"substantial relationship" test is a product of common law and predates the Texas Rules
of Disciplinary Conduct for attorneys. Id. When seeking disqualification, "[t]he movant has
the burden of producing evidence of such specific similarities capable of being recited in
the disqualification order." Id. 
III. Analysis
          In the case now before us, the parties have supplied documents from the Budget
lawsuit, transcripts of hearings on two separate motions to disqualify Franks, and
documents related to the probate proceedings. The parties agree that Franks previously
worked as Raymond's attorney in Raymond's claims against Budget. The parties disagree,
however, on whether the substance of that prior lawsuit (and any information garnered
from Franks' representation of Raymond during that period) bears a substantial relationship
to the substance of the will contest.
          Texas courts have often looked to the disciplinary rules to decide disqualification
issues. In re Meador, 968 S.W.2d 346, 350 (Tex. 1998). While the disciplinary rules are
merely guidelines, not controlling standards, for court-ordered disqualification, the rules do
provide reasonable guidance‒even in cases where an attorney may not have clearly
violated one of its canons. Id. at 351; see also In re Bahn, 13 S.W.3d 865, 872 (Tex.
App.‒Fort Worth 2000, orig. proceeding) (quoting Rule 3.08 extensively). Rule 3.08 of the
Texas Disciplinary Rules of Professional Conduct states:
(a)A lawyer shall not accept or continue employment as an
advocate before a tribunal in a contemplated or pending adjudicatory
proceeding if the lawyer knows or believes that the lawyer is or may be a
witness necessary to establish an essential fact on behalf of the lawyer's
client, unless:
 
(1)the testimony relates to an uncontested issue;
 
(2)the testimony will relate solely to a matter of formality
and there is no reason to believe that substantial evidence will be
offered in opposition to the testimony;
 
(3)the testimony relates to the nature and value of legal
services rendered in the case;
 
(4)the lawyer is a party to the action and is appearing
pro se; or
 
(5)the lawyer has promptly notified opposing counsel that
the lawyer expects to testify in the matter and disqualification of the
lawyer would work substantial hardship on the client.
Tex. Disciplinary R. Prof'l Conduct 3.08, reprinted in Tex. Gov't Code Ann., tit. 2,
subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). 
          In this case, Works has made clear he intends to call Franks as a material fact
witness. The substance of the expected testimony concerns whether Raymond and
Delores had a valid premarital agreement that would prevent Delores from claiming a
portion of Raymond's estate as community property in the event the trial court determined
Raymond died intestate. The record before us, however, does not demonstrate that
Franks' prior representation of both Raymond and Delores is substantially related to his
representation of Delores in the will contest. 
          First, the factual substance of Franks' prior attorney-client relationship with
Raymond concerned injuries Raymond sustained in a motor vehicle-pedestrian accident. 
The substance of the present suit concerns the proper division of Raymond's estate. The
bases of the two suits are not the same. Further, because Franks jointly represented
Raymond and Delores, there is no threat that "confidences that were revealed to the
former attorney will be revealed by that attorney to its present adversary." See Cap Rock
Elec. Coop., Inc., 35 S.W.3d at 230. Any confidences between Raymond and Franks are
assumed to have been revealed to Delores in 1998 as a result of Franks' joint
representation. Cf. Tex. R. Evid. 503(d)(5) (no attorney-client privilege for communications
relevant to parties of joint representation if communication was made by any of them when
subsequently offered in action between the former joint clients). Thus, the fear of
disclosure of confidential information to an adverse party is a moot issue: any such
information has already been disclosed to Delores, who is free to disclose it to Franks,
another attorney, or anyone she so chooses.
          Second, Works has not provided this Court with a copy of any premarital agreement
between Delores and Raymond. Not all premarital agreements remove the couple's entire
marital estate from Texas' community property laws. Many, if not most, assuredly do. 
Some premarital agreements, however, only purport to remove certain items of the marital
estate (i.e., gains from the sale of stock in the person's premarriage portfolio, or employee
pension contributions and/or benefits) from the community property laws. Assuming,
arguendo, that Raymond and Delores had a premarital agreement, it is impossible to
understand its scope without having the actual agreement before us. Nor would it be
proper for us to speculate as to either the contents of an unseen premarital agreement or
its impact on whether Franks would be a material witness regarding the agreement's effect
on the division of Raymond's estate. 
          Third, none of the witnesses who testified regarding disqualification affirmatively
testified they had personal knowledge of a premarital agreement between Raymond and
Delores. Instead, the testimony before the trial court on the subject consisted of hearsay
and innuendo. The trial court sustained objections to much of the hearsay testimony. The
remaining evidence consisted of testimony regarding conversations Delores had with
Works over several days shortly after Raymond's death. Works claims Delores admitted
she knew she had signed a premarital agreement with Raymond. Works also contends
the premarital agreement precludes her from receiving any of Raymond's property. 
Delores testified she unwittingly misled Works into thinking she and Raymond had a
premarital agreement when, in fact, she was only agreeing with anything Works said so
that he would leave her alone and so that she could focus on grieving for Raymond. This
testimony, if believed, would be a reasonable explanation of what might otherwise be seen
as admissions on a key fact in this case. Thus, on the meager record before us, it would
be a stretch for us to say that the record mandates that the trial court disqualify Franks.
          Fourth, there is no evidence before us that Franks drafted either the alleged
premarital agreement or the copy of the will submitted for probate. In fact, Delores testified
the document she signed before marrying Raymond was something she believed had been
drafted by an attorney named Don Friedman. Except in narrow circumstances not
applicable here, the Texas Rules of Disciplinary Procedure do not prohibit Franks from
representing Delores' challenge to the validity of Friedman's work product.



          Fifth, Franks repeatedly told the trial court he did not draft any alleged premarital
agreement between Raymond and Delores. This testimony, if believed, would directly
contradict the estate's contention that Franks should be disqualified because Delores'
claims against the estate represent a challenge to Franks' prior work product on
Raymond's behalf. Thus, we cannot say the trial court abused its discretion by siding with
one version of the evidence, rather than the opposite version. 
          Sixth, whether, in 1998, Franks may have structured Raymond's and Delores'
settlements in accordance with a premarital agreement bares no direct impact on whether
such agreement still existed in 2003. It is possible, assuming, arguendo, a premarital
agreement existed, Raymond and Delores revoked such an agreement before Raymond's
death. However, without first having proof of the premarital agreement, demonstrated by
introducing the actual agreement or through testimony from a witness with personal
knowledge of the agreement's existence and its contents, the trial court should not be
required to presume the continued existence of a valid, binding premarital agreement or
its contents.
IV. Conclusion
          Based on the record before us, we find the trial court did not abuse its discretion by
denying Works' motion to disqualify counsel. The record fails to demonstrate that Franks'
prior representation of Raymond bears such a substantial relationship to his adverse
representation of Delores in the will contest that Franks should be disqualified in the
present litigation. We deny the petition for writ of mandamus.
 
                                                                           Donald R. Ross
                                                                           Justice

 
Date Submitted:      October 16, 2003
Date Decided:         October 17, 2003




untain & S. Ry. Co. v. Williams, 251 U.S. 63, 66–67 (1919)); see Owens-Corning Fiberglas Corp.
v. Malone, 972 S.W.2d 35, 44–48 (Tex. 1998) (due process analysis of punitive damages).
            Pennington found the pre-1979 treble damages scheme of Section 17.50(b) of the Texas
Deceptive Trade Practices Act did not impose a constitutionally excessive fine. In reaching its
conclusion, the court recited that the recovery "increased in a fixed proportion to" the actual loss and
noted that "the amount of liability bore some relation to the offense." See Pennington, 606 S.W.2d
at 691. In the case at hand, there is no relation between the so-called "liquidated damages" of
Section 5.077 and any actual damages—which are not required under Section 5.077. Also, it is
difficult to see any relation between the offense—failing to provide an annual financial report—and
the potential liability under Section 5.077 as it was before the 2005 amendments. Section 5.077, as
it was, is also constitutionally suspect as potentially imposing an excessive fine.
            Thus, we find the 2001–05 version of Section 5.077, standing alone, constitutionally suspect. 
We need not decide its constitutionality, however, because Section 5.077 does not stand alone.
(2)      Chapter 41 Applies, Conditioning and Limiting Recovery of Section 5.077's "Liquidated 
           Damages"
            On September 1, 1995, when Section 5.077 was first effective, and on September 1, 2001,
when it was amended to make it applicable state-wide and to provide the liquidated damages
questioned here, Chapter 41 of the Texas Civil Practice and Remedies Code was in existence in
much its current form. See Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001–.013 (Vernon 1997 &
Supp. 2005). And, by its terms, Chapter 41 applies to a Section 5.077 claim.
            Chapter 41 broadly "applies to any action in which a claimant seeks damages relating to a
cause of action." Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a). It limits "damages that may be
awarded in an action subject to this chapter, including an action for which damages are awarded
under another law of this state." Tex. Civ. Prac. & Rem. Code Ann. § 41.002(b) (emphasis added). 
Notably, Chapter 41 expressly declares that it will control in any conflict with any other state law,
except four statutes not relevant here. Tex. Civ. Prac. & Rem. Code Ann. § 41.002(c), (d).
            More to the point, Chapter 41 also covers exemplary damages, which it defines as "any
damages awarded as a penalty." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5). As has recently
been made clear, the "liquidated damages" recoverable under Section 5.077 of the Texas Property
Code constitute a penalty. Flores, 2005 Tex. LEXIS 733, at *7. Thus, the Section 5.077 "liquidated
damages" fall squarely within Chapter 41's definition of exemplary damages. See id. (Brister, J.,
dissenting). Therefore, within the plain language of Chapter 41, it applies to Section 5.077
"liquidated damages."
            Even if the plain language of Chapter 41 did not require us to conclude that Chapter 41 limits
Section 5.077 recoveries, the generally accepted rules of statutory interpretation would lead us there. 
A penal statute, such as Section 5.077, should be strictly construed. Brown v. De la Cruz, 156
S.W.3d 560 (Tex. 2004). We interpret a statute to avoid absurd conclusions or unjust discrimination
if the statute is subject to a different, more reasonable interpretation. C & H Nationwide, Inc. v.
Thompson, 903 S.W.2d 315, 322 n.5 (Tex. 1994). "Unless there is no alternative, a statute will not
be interpreted so as to lead to a foolish or absurd result." McKinney v. Blankenship, 154 Tex. 632,
282 S.W.2d 691, 698 (1955).
            If possible, we construe statutes to avoid constitutional infirmities. Marcus Cable Assocs.,
L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002); In re Bay Area Citizens Against Lawsuit Abuse, 982
S.W.2d 371, 380 (Tex. 1998); see also Tex. Gov't Code Ann. § 311.021(1) (Vernon 2005). We
do this because we presume the Legislature intended compliance with state and federal constitutions. 
Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 715 (Tex. 1990).
            Thus, we hold Chapter 41 applies to Section 5.077 claims.
(3) The Statutory Scheme Which Includes Section 5.077 and Chapter 41 Is Constitutional
            Chapter 41 provides that, before exemplary damages—which include Section 5.077
"liquidated damages"—may be recovered, more-than-nominal actual damages


 must be awarded to
the claimant.


 Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a). Chapter 41 also limits such
exemplary damages to no more than the greater of (a) $200,000.00, or (b) any noneconomic damages
found by a jury not to exceed $750,000.00, plus double the amount of economic damages. Tex. Civ.
Prac.  &  Rem.  Code  Ann.  §  41.008(b).  Those  restrictions  would  dramatically  limit  the
Section 5.077 penalty and impose as a condition precedent that actual damages be proven, thus
making Section 5.077 clearly constitutional as it fits within the legislative scheme.
 
 
 
 
 
            Since Section 5.077, in light of the applicable Chapter 41, is constitutional as applied here, 
the summary judgment was improper and must be reversed. Since our holding cannot dispose of the
case, we remand this case to the trial court for further proceedings consistent with this opinion.



                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          September 7, 2005
Date Decided:             November 30, 2005