NO. 07-06-0064-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 6, 2006



______________________________




IN RE ARTHUR AGUILAR, JR., RELATOR



______________________________






Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

ORDER DENYING PETITION FOR MANDAMUS

AND MOTION TO STAY THE UNDERLYING PROCEEDING


 By this original proceeding, relator Arthur Aguilar, Jr. seeks a writ of mandamus to
compel the Honorable Felix Klein to rescind the temporary order of December 20, 2005,
naming the Texas Department of Family and Protective Services temporary managing
conservator of the minor child of relator and real party in interest Kami Eady. (1) After a
hearing on relator's motion to modify temporary orders and for extraordinary relief, Judge
Gleason signed the December 20 order based on results of a hair follicle test indicating the
presence of methamphetamine in the child at a level more than ten times the threshold
amount of an adult. The order recites that the trial court did not have conclusive evidence
of the source of the methamphetamine and found the child's physical health was
endangered. Although the order provides for the Department to fully investigate the
circumstances of the child's exposure to methamphetamine and advise the Court
concerning the child's welfare, the record does not indicate if a report has been provided
of the results of the investigation.

 Following Judge Gleason's recusal and appointment of Judge Klein, on February
8, 2006, relator filed a motion before Judge Klein seeking to rescind the December 20
order. However, according to the record before us, no hearing was held nor order
rendered on that motion. Following the filing of this petition, the Department filed an
original petition for protection of the child, for conservatorship, and for termination of the
parent/child relationship. The Department's petition prompted relator to file a motion to stay
the underlying proceedings. 

 Relator presents seven issues not necessarily relevant to a mandamus proceeding. (2) 
The source of the child's exposure to methamphetamine is a fact question that cannot be
determined by a mandamus proceeding. See Brady v. Fourteenth Court of Appeals, 795
S.W.2d 712, 714 (Tex. 1990). Additionally, when a motion is properly pending before a
trial court, the act of considering and ruling upon it is a ministerial act. Eli Lilly and Co. v.
Marshall, 829 S.W.2d 157, 158 (Tex. 1992). However, before relator may be entitled to
mandamus relief, he must provide a sufficient record to show the motion was presented
to the trial court and it refused to act. In re Villarreal, 96 S.W.3d 708, 710 n.2
(Tex.App.-Amarillo 2003, orig. proceeding). The record does not reflect whether Judge
Klein has been advised of the relief sought nor whether he has declined to set a hearing
on relator's motion to rescind the December 20 order. Accordingly, relator's petition for writ
of mandamus and motion to stay the underlying proceeding are denied.

 It is so ordered. 

 Per Curiam

 

 
1. The order was signed by the Honorable David L. Gleason, Senior District Judge,
who has since been recused.
2. Relator contends the trial court testified in violation of Rule 605 of the Texas Rules
of Evidence. Rule 605 is implicated when a trial judge steps down from the bench and
becomes a witness. See Hensarling v. State, 829 S.W.2d 168, 171 (Tex.Cr.App. 1992). 
There is nothing in this record to indicate Judge Gleason became a witness. Additionally,
comments from a trial judge constitute ordinary trial error that must be preserved for
appellate review. See In re M.S., 73 S.W.3d 537, 539-40 (Tex.App.-Beaumont 2002),
rev'd on other grounds, 115 S.W.3d 534 (Tex. 2003).



nement in the Harris County Jail. Appellant timely perfected
appeal from each judgment and now presents three issues for our review. They are
whether 1) there was legally sufficient evidence to support the conviction when the State
failed to prove the tax assessor-collector prescribed and made available a form to maintain
the records required under Section 520.057(a); 2) the evidence was legally sufficient to
sustain her conviction when the form made available by the tax assessor-collector does
not request all of the information required by the statute, and 3) the trial court erred in
setting out the provisions of Section 520.057(b) in its charge when appellant was not
charged with violating that subsection. 

 Appellant's first challenge is to the legal sufficiency of the evidence. She argues
there was no evidence that the Harris County Tax Assessor-Collector created and made
available a form as required by the Act. In considering a legal insufficiency challenge, we
are required to view the evidence in a light most favorable to the prosecution and then
determine if any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,
61 L.Ed.2d. 560 (1979). 

 At trial, the State admitted the document entitled Harris County Title Service
Transaction Form as its exhibit number six. Deputy Clerk Aguilar identified the form and
stated "they have to present this form every time they conduct business within our office."
In discussing the processing of applications for title services, she stated that she would 
explain to title services "what they have to do with that transaction sheet . . ." (emphasis
added). Viewing the evidence in the light most favorable to the verdict, as we must, from
this testimony, and the text of the form itself, a rational trier of fact could find that State's
exhibit number six was a form promulgated by the tax assessor pursuant to the Act. We
overrule appellant's first issue.

 Appellant's second issue assumes, for the purpose of argument, that State's exhibit
six, entitled "Harris County Title Service Transaction Form," is a form prescribed by the tax
assessor pursuant to the Act. That form contains blanks for date of sale, vehicle year,
make, vehicle identification number and purchaser's name. It does not contain a place for
the recordation of a customer's age, sex, driver's license number, or the vehicle's license
plate number. Appellant argues there was no evidence "that the . . . tax assessor-collector
prescribed and made available a form that could be used to maintain all the records
required by Section 520.057(a). Therefore it was impossible for the State to establish that
appellant failed to maintain records on a form prescribed by the tax assessor-collector." 
After reciting the evidence introduced at trial, the State's argument in support of the jury's
verdict consists of a single conclusory sentence that the evidence is sufficient to support
a finding that appellant failed to maintain the information on the tax assessor's form. It
contains no discussion of how a licensee could record this information on the form
provided.

 Resolution of this issue requires construction of section 520.057. A court's primary
objective in construing a statute is to determine and give effect to the legislative intent. 
Liberty Mutual Insurance Company v. Garrison Contractors, Inc., 966 S.W.2d 482, 484
(Tex. 1998). That purpose is accomplished by first looking at the plain and common
meaning of the statute's words, unless the plain meaning would produce an absurd result.
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 134 (Tex. 1994). By statute
we are also instructed that in our construction, we are to presume that the entire statute
is intended to be effective, to create a just and reasonable result, and one feasible of
execution. Tex. Govt. Code Ann. § 311.021 (Vernon 1998). 

 Here, a literal reading of section 520.057(a)(2) and (3) would require that the title
service company photocopy customers' drivers' licenses and proof of financial
responsibility directly onto the form promulgated by the tax assessor. The State takes the
position that this is what is required of title service companies without offering any
explanation of how this could be accomplished on the form provided. However, we
perceive this to be an absurd result and question whether it would be feasible of execution. 
The intent of the legislature appears clear; that title service companies obtain photocopies
of customers' drivers' licenses as proof of financial responsibility. The failure to provide
space on the tax assessor's form for those copies does not excuse performance of that
statutory duty, and appellant has provided no authority supporting the conclusion that it
would.

 Appellant also argues that the absence of the items on the tax assessor's form is
determinative because the court's charge only alleged she failed to maintain the
information on the prescribed form, not that she failed to keep the required information. 
The application paragraph of the court's charge provided:

 Now, if you find from the evidence beyond a reasonable doubt that on or [sic]
October 4, 2000, in Harris County Texas, the Defendant . . . did unlawfully,
while the holder of a motor vehicle title service license, intentionally or
knowingly fail to maintain records for each transaction in which the
defendant received compensation, on the form prescribed and made
available by the Harris County tax assessor-collector, as required by section
520.057 . . . namely, a transaction for [listing specific vehicle], then you will
find the defendant guilty.

In Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997), the Court of Criminal
Appeals held that the sufficiency of the evidence must be measured by the elements of the
offense as defined by a hypothetically correct jury charge. Id. at 240. A hypothetically
correct jury charge for a case would be one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried. Id. at
239-40. 

 Applying the teachings of Malik to this case requires us to determine whether the
phrase "on the form" in the application paragraph of the court's charge was surplusage. 
Our holding that the legislature did not intend to require title services to photocopy onto
the tax assessor's form dictates a finding that the phrase "on the form" is surplusage as
to the items that are required to be photocopied. As to the other information, specifically
the vehicle license plate number, customer's address and, for individual customers, (3) their
age, sex, and driver's license number, the phrase would not be surplusage. Therefore,
where the evidence clearly showed the tax assessor's form did not allow for the entry of
those items, no rational factfinder could find appellant intentionally or knowingly failed to
maintain that information "on the form prescribed" by the tax assessor.

 We sustain appellant's second issue. This disposition obviates the need to address
appellant's third issue. Because we find the evidence legally insufficient, we reverse the
judgment of the trial court and render a judgment of acquittal in each case.


 John T. Boyd

 Chief Justice


Do not publish.














 
1. Section 520.057 provides:


 (a) A holder of a motor vehicle title service license shall maintain records as
required by this section on a form prescribed and made available by the
county tax assessor-collector for each transaction in which the license holder
receives compensation. The records shall include:


 (1) the date of the transaction;


 (2) the name, age, address, sex, driver's license number, and a legible
photocopy of the driver's license for each customer; and


 (3) the license plate number, vehicle identification number, and a legible
photocopy of proof of financial responsibility for the motor vehicle involved.


 (b) A motor vehicle title service shall keep:


 (1) two copies of all records required under this section for at least two years
after the date of the transaction;


 (2) legible photocopies of any documents submitted by a customer; and


 (3) legible photocopies of any documents submitted to the county tax
assessor-collector.
2. Compliance with rules promulgated by the tax assessor are not at issue here and
we need not address whether the legislature improperly delegated its power to define
criminal offenses to that official.
3. Although not raised by appellant, we note the Act does not define the term
"customer." This is significant because the purchasers of two of the vehicles at issue are
shown to be Astrodome Auto Sales. We presume this is a corporation, which clearly would
not have a driver's license, precluding appellant from obtaining a copy of that document. 
However, a corporation would have an address, proof of financial responsibility, and the
vehicle license plate number.