Opinion issued December 17, 2009









In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00321-CV






DAVID E. MARCUS, Appellant


V.


MARGARET A. SMITH, Appellee






On Appeal from the 310th Family District Court 

of Harris County, Texas

Trial Court Cause No. 2004-45005






* * *





NO. 01-09-00461-CV

NO. 01-09-00702-CV






IN RE DAVID E. MARCUS, Relator






Original Proceedings on Petitions for Writ of Mandamus






O P I N I O N


 In this appeal and these petitions for writs of mandamus, David E. Marcus
seeks relief from the trial court's March 3, 2009 order dismissing his lawsuit and
imposing trial attorney's fees, and from the trial court's April 16, 2009 temporary
orders imposing appellate attorney's fees and quashing exhibits. (1) In three issues
raised in the appeal, Marcus contends the trial court erred by (1) awarding trial
attorney's fees to Smith's attorney; (2) awarding appellate attorney's fees to Smith's
attorney; and (3) disallowing Marcus's resubmission of trial exhibits after he had
taken them back into his possession and withdrawn them from the court. The petition
for mandamus in appellate number 01-09-00461-CV asserts the same challenges
raised in the appeal concerning the award of appellate attorney's fees. In three issues
pertaining to the petition for mandamus in appellate number 01-09-00702-CV,
Marcus repeats his complaint about the trial court's refusal to allow him to resubmit
trial exhibits, but he additionally asserts the trial court erred by denying his motion
to enforce his visitation rights, and by directing him to pay fees for Smith's trial
attorney. Smith responds by challenging our jurisdiction over these cases and,
alternatively, addressing the merits of the contentions. We conclude the trial court
did not abuse its discretion by dismissing the motion to enforce the order adjudicating
parentage and by awarding trial and appellate attorney's fees. We affirm the trial
court's March 3, 2009 dismissal order, modify the trial court's April 16, 2009
temporary orders to make the appellate attorney's fees contingent upon successful
appeal, and deny the petitions for writs of mandamus. 

Background

 Marcus, appellant and relator, and Margaret Smith, appellee and real party in
interest, are joint managing conservators of their son. According to the order
adjudicating parentage, Marcus "shall have the right to possession of the child for the
first two days of Hanukkah," and Smith "shall have the right to possession of the
child beginning at noon on December 24 and ending at noon on December 26." After
the order adjudicating parentage was signed, Marcus desired to spend Christmas with
his son, and he and Smith began negotiating a "swap" of holidays. Specifically,
Marcus made an offer to Smith that she could have their son on the first two days of
Hanukkah if he could have their son every other Christmas. 

 Smith decided to take their son to Mexico, and sought Marcus's consent. 
Smith sent Marcus an email that stated, "In no way will it effect [sic] your visitation
time with [D.M.]. . . . I'll probably have him back earlier than 5:00 on the 23rd." In
2008, however, the first two days of Hanukkah occurred on December 21 and 22, so
Smith's assurance that Marcus's visitation with his son would not be affected was
inaccurate. 

 On November 20, 2008, Marcus gave his approval for his son to travel to
Mexico with Smith. The letter stated,

I hereby give written authorization to allow [D.M.] to travel, with you,
beyond the territorial limits of the United States. Also, enclosed is the
signed and notarized Statement of Consent for the Issuance of [D.M.'s]
(minor) passport. Hope y'all have lotsa fun in Mexico. I may do the
same--and take him overseas--this summer. He'll be a little world
traveler in no time.


About three weeks after Marcus gave his consent for his son to travel with Smith,
Smith sent an email explaining to Marcus she had miscalculated the days their son
would be away and asking for Marcus's consent to keep their son on December 21
and 22. On December 11, 2008, Smith emailed Marcus, as follows:

I'm afraid I have made an oversight that you had days (21st and 22nd of
Dec) when I booked our trip to Mexico. When I got your letter
approving the passport application and saying have a good time, I
assumed that if there was any conflict with me taking [D.M.] over the
holiday, (and you saying have a great time in your letter), you would
have immediately brought that to my attention. I'm not sure if that was
an oversight on your part, but it definitely was on mine. We have non-refundable tickets and non-refundable hotel . . . . I have a lot of
activities planned for the kids, and I'm sure it will be a great experience
for them. In the past, you have on at least two occasions asked me for
[D.M.] a day early or late for scheduling trips to Florida. . . . So can we
swap those days?


Marcus said he would agree to allow Smith to have their son on December 21 and 22
if she agreed to alternate possession of their son on future Christmases. 

 When Smith did not agree to alternating possession of their son on future
Christmases, Marcus stated,

I know you didn't realize it. . . . I hearya, it was a simple mistake. It's
fine. I understand. The condition under which you can have him on the
21-22 is that we swap alternating Christmases. I guess you've made
your decision: you don't want it badly enough to swap.


Smith did not agree to switch future Christmases but did counteroffer that they
"switch for Monday and another day of your choice." A long exchange of emails
followed consisting of offers and counteroffers. The email exchange does not
indicate whether Marcus and Smith reached an agreement. Marcus took Dylan to
Mexico, and the trip included the first two days of Hanukkah, December 21-22, 2008.

 In January 2009, Marcus moved to enforce the order adjudicating parentage by
asking the court to hold Smith in contempt for denying him visitation rights for the
first two days of Hanukkah. Smith answered, counterclaimed for sanctions, and
moved to dismiss the suit. At the hearing on the motion to dismiss, Marcus
acknowledged he gave Smith permission to take their child to Mexico. The record
shows, as follows: 

[Counsel for Smith]: [T]he letter you wrote on November 20, you
told her to have a great time in Mexico, didn't
you? Didn't you?


[Marcus]: Yes.

. . . .

[Counsel for Smith]: Did you not send her a piece of paper telling
her to sign the modification decree and she
could forget about worrying about the two
days?


[Marcus]: No. I offered a trade.


[Counsel for Smith]: You told her, sir, if you can remember
without looking at anything, "I want to give
you what you want and I want Dylan to have
this Mexico trip." Those words, remember
those?


[Marcus]: Those are my words.


. . . .


[Counsel for Smith]: You were more than willing, you more than
willing in your heart to give Margaret, the
mother of y'all's child . . . the 21st and the
22nd, your Hanukkah, correct? You were
willing to give her that, correct?


[Marcus]: To accommodate, absolutely.


[Counsel for Smith]: All right. As well as the 26th, and the 27th,
and the 28th of this year, correct--last year?


[Marcus]: Yes.


[Counsel for Smith]: All right. But you said, sir, you will have to
switch the Christmas holiday schedule for the
following years, correct?


[Marcus]: Trade for trade, correct. 


[Counsel for Smith]: Sir, I didn't ask you about trade for trade. 
That was you telling her?


[Marcus]: Correct.


. . . .


[Counsel for Smith]: But on December 13th, December 13th, again
days before she was to have left with the
passport in hand or before--


[Marcus]: Yes, sir.


[Counsel for Smith]: --your letter to her, "I know you didn't
realize it until the December 1st e-mail." "It,"
I assume, being your two days, correct?


[Marcus]: Well, what does the rest say?


[Counsel for Smith]: It says, "I hear you. It was simple mistake. 
It's fine. I understand." You were talking
about the two days, weren't you?


[Marcus]: Absolutely. Trying to accommodate.


During the hearing on the motion to dismiss, counsel for Smith questioned Marcus
concerning his belief whether Smith intentionally violated the trial court's custody
order. The record shows the following: [Counsel for Smith]: When you told this Court and when you wrote
her and you said, "Yeah, I understand; it's a
mistake," you thought that that didn't mean
anything as far as contempt? She was still in
contempt even if she made a mistake, correct?


[Marcus]: No.


[Counsel for Smith]: All right. Because you know that contempt of
court is an intentional act, an intentional
conduct or intentional act, right?


[Marcus]: I see, yes.


[Counsel for Smith]: Right?


[Marcus]: Absolutely. 

 The trial court dismissed the suit and awarded Smith $10,000 in attorney's fees
on March 3, 2009. The "Dismissal Order" states, in pertinent part, 

It is further ordered that Margaret Smith's claim for relief is granted, and
hereby awards Judgment against David E. Marcus, in favor of Earle S.
Lilly, for the sum of $10,000.00 towards Margaret Smith's attorney's
fees, with interest at 10% per year compounded annually from the date
this Order is signed until paid. The judgment, for which let execution
issue, is awarded against David E. Marcus, and David E. Marcus is
Ordered to pay the attorney's fees to Earle S. Lilly . . . on or before
March 23, 2009, at 4:00 p.m. 


Just before the hearing concluded, the trial court asked if the parties would like to 


withdraw their exhibits and the parties replied that they would. 


 On March 24, three weeks after the trial, Marcus resubmitted the trial exhibits
he had withdrawn, and Smith moved to quash them. Specifically, Smith contended
that the parties had withdrawn the exhibits by agreement, and that the trial court
should not readmit them after removal from its custody. 

 The trial court denied Marcus's motion to resubmit the trial exhibits and
granted the motion to quash. The court explained its ruling as follows:

[T]he Court will allow you to submit the exhibits that you believe are
correct and give it to the court reporter. However, the court reporter will
have to state that those are not exhibits that were admitted since they
were withdrawn, but you are--you can present to the Court as if they
were exhibits that were not presented and they can consider that if they
wish.

Marcus filed a notice of appeal on March 25, 2009, and Smith requested an award of
appellate attorney's fees. 

 On April 16, 2009, the trial court granted Smith appellate attorney's fees in the
following order: 

[T]he Court has jurisdiction over the parties and subject matter under
Texas Family Code § 109.001(b). 


It is ordered the Court takes judicial notice of the attorney fee testimony
by Lilly as well as his argument for attorney fees under Texas Family
Code § 109.001(a)(5). It is further ordered that Margaret Smith's
request for appellate attorney fees is granted, and orders David E.
Marcus to pay to Earle S. Lilly the sum of $10,000.00 on or before April
23, 2009. If not timely paid, the Court further awards Judgment, against
David E. Marcus and in favor of Earle S. Lilly, in the sum of $10,000.00
for Margaret Smith's appellate attorney fees.

The Appeal

 A. Jurisdiction Over Entire Appeal

 Smith has moved to dismiss Marcus's appeal. Smith contends an appellate
court has no jurisdiction over an appeal from a trial court's denial of a motion to hold
a party in contempt because the order that fails to find a party in contempt is not a
final, appealable judgment. Smith asserts all of Marcus's issues in the appeal "stem
from Judge Millard's decision not to hold Margaret in contempt for two days of
visitation." Marcus responds that "orders refusing to hold a party in contempt that
fully and finally dispose of all parties and issues in the case should be appealable, in
circumstances such as these, as would any other final order." Marcus also asserts that
we have jurisdiction over the final, appealable order directing Marcus to pay a money
judgment. 

 The court of appeals has jurisdiction to hear an appeal when the "issues on
appeal do not assert that the trial court erred in refusing to hold [appellee] in contempt
of court." See In re W.J.B., 294 S.W.3d 873, 878 (Tex. App.--Beaumont 2009, no
pet. h.) (holding that appellate court has jurisdiction over portion of judgment when
portion concerns order directing party to pay money judgment and does not assert 
trial court erred by refusing to hold party in contempt). For example, although an
order concerns denial of contempt, the appellate court has jurisdiction over issues
concerning "that portion of [a] trial court's order denying [a] request that the trial
court confirm and then reduce the alleged child support arrearage to judgment." Id. 
"Decisions in contempt proceedings cannot be reviewed on appeal because contempt
orders are not appealable, even when appealed along with a judgment that is
appealable." Cadle Co. v. Lobingier, 50 S.W.3d 662, 671 (Tex. App.--Fort Worth
2001, pet. denied). Contempt proceedings are not appealable because they "are not
concerned with disposing of all claims and parties before the court, as are judgments;
instead, contempt proceedings involve a court's enforcement of its own orders,
regardless of the status of the claims between the parties before it." In re Office of
Atty. Gen. of Texas, 215 S.W.3d 913, 915-16 (Tex. App.--Fort Worth 2007, orig.
proceeding). 

 Here, Marcus appeals three issues--the award of trial court fees, the award of
appellate fees, and the order quashing his resubmission of trial exhibits. Although
these issues may stem from the contempt action in that they result from its filing and
resolution, Marcus does not challenge the trial court's refusal to hold Smith in
contempt of court. We have no jurisdiction to address the trial court's refusal to find
Smith in contempt of court, and Marcus is not asking that we address that matter. See
In re W.J.B., 294 S.W.3d at 878 ; In re Office of Atty. Gen. of Texas, 215 S.W.3d at
916. Instead, Marcus's appeal concerns the award for trial and appellate attorney's
fees, and the quashing of the trial exhibits, which are matters other than the merits
concerning the trial court's decision not to hold Smith in contempt. We hold we have
jurisdiction over the matters concerning trial attorney's fees and the quashing of the
trial exhibits. We conclude, however, that we lack jurisdiction to address the
appellate attorney's fees in the direct appeal for reasons we explain in the next
section. 

 B. Appellate Attorney's Fees

 In his second issue in the appeal, Marcus asserts the trial court abused its
discretion by awarding appellate attorney's fees because the order does not comply
with Texas Family Code section 109.001 and is not conditioned on a successful
appeal. 

 Smith contends we lack jurisdiction over the temporary orders because Marcus

is attempting to appeal a temporary order timely entered during the pendency of an
appeal, which is barred under section 109.001(c) of the Texas Family Code. Marcus
responds that section 109.001(c) does not apply because this appeal is not
interlocutory and is a final order in that it fully and finally awards all appellate
attorney's fees to Smith, payable immediately. Specifically, Marcus asserts the April
16, 2009 order awarding appellate attorney's fees cannot be interlocutory because
interlocutory appeals must occur before the final judgment, and the April 16, 2009
order was the final judgment. (2) 

 Section 109.001 of the Texas Family Code provides:

(a) Not later than the 30th day after the date an appeal is perfected,
on the motion of any party or on the court's own motion and after
notice and hearing, the court may make any order necessary to
preserve and protect the safety and welfare of the child during the
pendency of the appeal as the court may deem necessary and
equitable. In addition to other matters, an order may:


 . . . .


 (5) require payment of reasonable attorney's fees and expenses;

 

 . . . .


(b) A court retains jurisdiction to enforce its orders rendered under
this section unless the appellate court, on a proper showing,
supersedes the court's order.


(c) A temporary order rendered under this section is not subject to
interlocutory appeal.

Tex. Fam. Code § 109.001. Section 109.001 gives the trial court discretionary
authority to render temporary orders to protect the welfare of the child during the
pendency of an appeal, including ordering the payment of reasonable attorney's fees
and expenses, as necessary to protect the welfare of children during the pendency of
an appeal. See Id. § 109.001(a)(5). "A temporary order under section 109.001 is only
appropriate if a final judgment has been signed and a notice of appeal has been filed." 
In re K.M., No. 2-04-00044-CV, 2004 WL 2569384, at *8 (Tex. App.--Fort Worth
Nov. 12, 2004, pet. denied). 

 "The provision in section 109.001(c) prohibiting an interlocutory appeal has
been construed to mean that an appellate court lacks jurisdiction, in the pending
appeal, over a complaint about the denial of a temporary order rendered during the
appeal." In re Merriam, 228 S.W.3d 413, 415 (Tex. App.--Beaumont 2007, no pet.). 
Mandamus is the appropriate remedy to attack a temporary order under section
109.001. See Johnson v. Johnson, 948 S.W.2d 835, 838 (Tex. App.--San Antonio
1997, pet. denied); see also In re Gonzalez, 993 S.W.2d 147, 162 (Tex. App.--San
Antonio 1999, pet. denied). 

 Here, the March 3, 2009 order dismissing the lawsuit disposed of all parties
and claims in the lawsuit, and notice of appeal for that dismissal had been filed. The
order signed April 16, 2009 is titled "temporary orders" and specifically references
Texas Family Code section 109.001. We hold we lack jurisdiction over Marcus's
direct appeal concerning the award of appellate attorney's fees awarded in the
temporary order under section 109.001. See In re Gonzalez, 993 S.W.2d at 162;
Johnson, 948 S.W.2d at 838. 


 C. Trial Court Attorney's Fees

 In his first issue in the appeal, Marcus contends the trial court erred by ordering
him to pay $10,000 in trial attorney's fees. Specifically, he asserts that the award of
attorney's fees did not comply with the Texas Family Code because there was no
evidence that the award of fees were in the best interest of the child. Smith responds
that Marcus has waived appellate consideration of trial court attorney's fees because
Marcus failed to preserve the complaint on appeal by neglecting to make a timely
objection before the trial court. 

 "In order to preserve certain complaints regarding an award of attorney's fees,
a party must make a timely and sufficiently specific objection to such an award in the
trial court." Henry v. Henry, 48 S.W.3d 468, 481 (Tex. App.--Houston [14th Dist.]
2001) (citing Tex. R. App. P. 33.1; Massey v. Massey, 807 S.W.2d 391, 403 (Tex.
App.--Houston [1st Dist.] 1991, writ denied)) (issue regarding attorney's fees could
not be raised for first time on appeal); Villasenor v. Villasenor, 911 S.W.2d 411, 420
(Tex. App.--San Antonio 1995, no writ) (party failed to object to award of fees in
open court or in motion for new trial).

 A review of the record shows that Marcus made no objection. We hold Marcus
has waived the argument that the trial court erred by granting Smith her trial court
attorney's fees. See Henry, 48 S.W.3d at 481. 

 D. Resubmission of Trial Exhibits 

 In his third issue in the appeal, Marcus asserts that he removed his trial exhibits
from the custody of the court after being prompted by the trial court, and, therefore,
the trial court abused its discretion by denying the readmittance of his exhibits after
their removal. Specifically, prior to the conclusion of the motion to dismiss hearing,
the trial court asked, "Do y'all want to withdraw your exhibits?" Both parties replied
that they did, and withdrew their exhibits. Marcus contends that by refusing to
readmit his exhibits, the trial court prevented him from properly presenting his case
to the court of appeals, a subject that is proper for appeal. See Tex. R. App. P. 44.1(a). 

 The contested exhibits are included in the reporter's record and within the
appendices of numerous pleadings within the record, and we relied upon the
contested exhibits when formulating our opinion. The trial court, therefore, did not
prevent Marcus from presenting his case for appeal. See id. 

 The Petitions for Mandamus

 A. Applicable Law

Mandamus relief is available only to correct a "clear abuse of discretion" when
there is no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding). Clear abuse of discretion occurs when a trial court "reaches
a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error
of law." Id. (citing Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985) (orig. proceeding)). The reviewing court may not substitute its judgment for
that of the trial court when reviewing factual issues. Id. at 839-40. "Even if the
reviewing court would have decided the issue differently, it cannot disturb the trial
court's decision unless it is shown to be arbitrary and unreasonable." Id. at 840. 
"[A]n appellate court may not deal with disputed areas of fact in an original
mandamus proceeding." Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 714
(Tex. 1990). Specifically, "[i]f the record contains legally sufficient evidence both
against and in support of the trial court's decision then mandamus will not lie because
weighing conflicting evidence is a trial court function." In re Pirelli Tire, L.L.C., 247
S.W.3d 670, 686 (Tex. 2007, orig. proceeding). 

 B. Appellate Attorney's Fees

 In his sole issue in the petition for mandamus in appellate number 01-09-00461-CV, Marcus contends the trial court erred by awarding appellate fees to Smith. 
Marcus contends Smith failed to offer sufficient evidence that the award is necessary
to preserve and protect the safety and welfare of the child, as required under section
109.001. See Tex. Fam. Code § 109.001(a)(5). Marcus also contends the court erred
by making the award immediately payable rather than contingent on Smith's success
in the court of appeals.

 As we note earlier in this opinion, mandamus is the appropriate means to
challenge temporary orders entered under section 109.001. Tex. Fam. Code
§ 109.001(c); In re Gonzalez, 993 S.W.2d at 162. Also as noted earlier in this
opinion, section 109.001 authorizes the trial court to render temporary orders
requiring payment of reasonable attorney's fees and expenses, as "necessary to
preserve and protect the safety and welfare of the child during the pendency of the
appeal as the court may deem necessary and equitable." Tex. Fam. Code §
109.001(a); Love v. Bailey-Love, 217 S.W.3d 33, 37 n.1 (Tex. App.--Houston [1st
Dist.] 2006, no pet.). 

 Evidence is sufficient to justify appellate attorney's fees to preserve and protect
the safety and welfare of the child under section 109.001 when the recipient of
appellate attorney's fees "has primary responsibility of the children and for the care
and upkeep of and the debt on the children's principal home." In re Garza, 153
S.W.3d 97, 101 (Tex. App.--San Antonio 2004, orig. proceeding). Smith introduced
evidence that she incurred approximately $22,000 in attorney's fees in the underlying
suit, and that she would incur at least $10,000 to defend an appeal. Smith has primary
responsibility for the child and for the child's principal home. Moreover, the record
shows that Smith has a "lack of funds" and "still owes [her attorney] money." 
Because Smith provided evidence to the trial court to receive appellate attorney fees
to preserve and protect the safety and welfare of her child, we must defer to the trial
court's decision to award the fees. See id.; see also In re J.L., 163 S.W.3d 79, 85
(Tex. 2005). 

 We deny the petition for writ of mandamus because the record does not show
the trial court acted arbitrarily or unreasonably by determining that Smith's award of
appellate attorney fees during the pendency of the appeal would help preserve the
welfare of the child. An unconditional award of appellant's appellate attorney's fees
is improper, and a trial court must condition the award upon the appellant's
unsuccessful appeal. Keith v. Keith, 221 S.W.3d 156, 171 (Tex. App.--Houston [1st
Dist.] 2006, no pet.); In re Garza, 153 S.W.3d at 101 ("The trial court is expressly
authorized to award appellate attorney's fees when it is necessary and equitable to
protect the welfare of the children. . . . [W]e hold the trial court could reasonably
conclude that it would be equitable to order Stephanie to pay Xavier's appellate
attorney's fees in the event her appeal is unsuccessful. And, because the award of
appellate attorney's fees is contingent on Stephanie being unsuccessful in her appeal,
the award does not 'penalize [Stephanie] for taking a successful appeal.'"). However,
an unconditional award of appellate attorney's fees does not require reversal; instead,
the appellate court may modify the trial court's judgment to make the attorney's fees
contingent upon successful appeal. Keith, 221 S.W.3d at 171. Although the trial
court should have conditioned its order on success before the appellate court, its
failure to do so does not require reversal. See id. We modify the trial court's order
to make the appellate attorney's fees contingent upon successful appeal. See id. 

 C. Denial of Motion to Enforce Visitation 

 In his first issue in the petition for mandamus in appellate cause number 01-09-00702-CV, Marcus contends the trial court improperly denied his motion to enforce
his visitation rights. Marcus asserts the trial court abused its discretion by dismissing
his motion to enforce the order adjudicating parentage because Smith violated the
order adjudicating parentage by failing to relinquish their son for Hanukkah visitation
with Marcus. 

 "Contempt orders that do not involve confinement cannot be reviewed by writ
of habeas corpus, and the only possible relief is a writ of mandamus." In re Long,
984 S.W.2d 623, 625 (Tex. 1999). A relator may seek mandamus relief for a trial
court's finding that a party is not in contempt. See, e.g., Rowe v. Moore, 756 S.W.2d
117, 119 (Tex. App.--Houston [1st Dist.] 1988, orig. proceeding). 

 Here, the record shows a dispute over whether Marcus and Smith agreed to
modify the order adjudicating parentage allowing Smith to possess their son for the
first two days of Hanukkah in 2008. See Brady, 795 S.W.2d at 714; In re Pirelli Tire,
L.L.C., 247 S.W.3d 670, 686. The record also shows a dispute over whether Smith's
violation of the order adjudicating parentage was unintentional. See id. We deny the
petition for mandamus because the record does not show the trial court acted
arbitrarily or unreasonably. See Walker, 827 S.W.2d at 839. 

 D. Trial Attorney's Fees

 In his second issue in the petition for mandamus in appellate number 01-09-00702-CV, Marcus contends the trial court erroneously ordered him to pay trial
attorney's fees. We have already addressed that issue in the direct appeal. Because
Marcus had an adequate remedy by appeal, mandamus relief is unavailable to Marcus. 
See id. 

 E. Exhibits

 In his third issue in the petition for mandamus in 01-09-00702-CV, Marcus
asserts the trial court erred by refusing to permit him to resubmit his trial exhibits. 
We have already addressed this issue in the direct appeal. Because Marcus had an
adequate remedy by appeal, mandamus relief is unavailable to Marcus. See id. 





 Conclusion 

 We affirm the trial court's judgment, modify the trial court's April 16, 2009
order to make the appellate attorney's fees contingent upon successful appeal, and
deny the petitions for writs of mandamus. All outstanding motions are overruled as
moot. 

 

 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.
1. The appeal is cause number 01-09-00321-CV. The petitions for writs of
mandamus are cause numbers 01-09-00461-CV and 01-09-00702-CV. The
underlying case is In The Interest Of D.S.M., A Minor Child, cause number
2004-45005, in the 310th Judicial District Court of Harris County, Texas, the
Hon. Lisa Millard, presiding. 
2. In other sections of his brief, Marcus asserts that the March 3, 2009 order dismissing
the lawsuit was the final judgment.