

**IN THE**
**TENTH COURT OF APPEALS**

—————————

**No. 10-12-00443-CR**

**IN RE THE STATE OF TEXAS EX REL. DAVID P. WEEKS**

—————————

**Original Proceeding**

———————————————————————————————————

**O P I N I O N**

———————————————————————————————————

In this original proceeding, the State of Texas, through David P. Weeks, the Criminal District Attorney of Walker County, as Relator, seeks mandamus relief against the Respondent, the Honorable Kenneth Keeling, Judge of the 278th District Court of Walker County. It arises out of the trial proceeding in the criminal prosecution of John Ray Falk, Jr., the Real Party in Interest, for capital murder. Falk is charged by indictment with capital murder under Penal Code section 19.03(a)(4), which makes a capital offense of the commission of murder while escaping or attempting to escape from a penal institution. TEX. PENAL CODE ANN. § 19.03(a)(4) (West Supp. 2012).

Relator seeks mandamus relief because (1) Respondent has refused to submit a

law-of-parties instruction in the court's charge under Penal Code section 7.02(a)(2); and (2) Respondent overruled the State's objection to the charge's application paragraph for party conspiracy under section 7.02(b), where the State objected that it requires the State to prove that Falk anticipated the specific manner and means by which his co-conspirator killed the victim. *See id.* § 7.02(a)(2), (b) (West 2011). For the reasons set forth below, we deny the petition for writ of mandamus.

## Factual Background

The Court of Criminal Appeals recently affirmed the capital murder conviction of Falk's co-defendant, Jerry Duane Martin, who was tried separately. *See Martin v. State,* No. AP-76,317, 2012 WL 5358862 (Tex. Crim. App. Oct. 31, 2012) (not designated for publication). Briefly, and for background purposes only, the evidence in Martin's case reveals that Martin and Falk were inmates at the Texas Department of Criminal Justice (TDCJ) Wynne Unit located in Huntsville, and, on the day in question, they were assigned to work the Wynne Unit onion patch, which was outside the main perimeter fence of the prison and adjacent to the City of Huntsville Service Center. The Service Center was, at that time, separated from prison property by only a chain-link fence in some portions and a barbed-wire fence in others. Martin and Falk disarmed a guard, and Falk ended up with the guard's handgun. They fled onto Service Center property.

While guards, including TDCJ Officer Susan Canfield, were firing at Falk, Martin got into a truck parked at the Service Center; the key was in the truck. Canfield, who was on horseback, advanced on Falk while firing at him with her revolver. When Canfield had expended her revolver's bullets, Falk ran at her as she was trying to

remove her rifle from its scabbard. They engaged in a struggle for the rifle, but once Falk jabbed his stolen revolver in her ribs, Canfield ceased struggling and Falk took the rifle and backed away.

Martin then drove the truck straight toward Canfield and hit her horse and her just as Falk backed away. Canfield and the horse went up onto the hood of the truck. Canfield's back and shoulders hit the windshield, and her head struck the roof. Canfield was then launched into the air and came down on her head, shoulder, and neck. After striking Canfield and her horse, Martin stopped the truck and Falk got in it. They drove off but were soon apprehended. Canfield died from the severe injuries she received from the impact with the truck. *See id.* 2012 WL 5358862, at *1-4.

**Procedural Background**

At the time of the filing of Relator's petition for writ of mandamus, the evidence had closed in Falk's capital murder trial. Respondent refused to submit a parties instruction in the court's charge under Penal Code section 7.02(a)(2). A record excerpt reflects Respondent's belief that there is no evidence supporting a parties instruction under section 7.02(a)(2). Also, Respondent overruled the State's objection to the charge's application paragraph on capital murder (escape) conspiracy under section 7.02(b). That paragraph requires the State to prove that Falk anticipated the specific manner and means by which Martin killed Canfield.

With the petition, Relator filed an application for emergency temporary stay, which was granted. Falk filed a "motion to dismiss, strike or summarily deny the petition for writ of mandamus and to vacate the stay." In his motion, Falk complains

that the petition fails to comply with many of the procedural requirements of Rule of Appellate Procedure 52. *See* Tex. R. App. P. 52. In a supplemental brief, Relator requests that we implement Rule 2 and suspend the procedural requirements of Rule 52 that Relator has not complied with. *See id.* 2. Using Rule 2, we suspend the procedural requirements of Rule 52, and having done so, we deny Falk's motion.

In a supplemental motion, Falk asserts that we must dismiss the petition for lack of jurisdiction because the State seeks the death penalty and the Court of Criminal Appeals has exclusive appellate jurisdiction of cases in which the death penalty has been assessed. *See* Tex. Code Crim. Proc. Ann. arts. 4.03 (West Supp. 2012), 4.04, § 2 (West 2005); *see also id.* art. 37.071, § 2(h) (West Supp. 2012). We disagree and deny the supplemental motion; the death penalty has not yet been assessed, and we have mandamus jurisdiction over the judge of a district court within our court of appeals district. Tex. Gov't Code Ann. § 22.221(b)(1) (West 2004).[1]

### Standard for Mandamus Relief in Criminal Proceedings

> To be entitled to mandamus relief, the relator must show that: (1) he has no adequate remedy at law, and (2) what he seeks to compel is a ministerial act. With respect to the second requirement, the relator must show a clear right to the relief sought. A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."

*In re State ex rel. Tharp*, ___ S.W.3d ___, ___, 2012 WL 5499867, at *2 (Tex. Crim. App.

---

[1] We also reject Falk's equal-protection challenge under the U.S. and Texas Constitutions. He cites no authority for the proposition that the exercise of our mandamus jurisdiction at the State's behest treats him dissimilarly because, were he to be assessed the death penalty, he could not appeal to us. Also, were Falk to seek mandamus relief from us before the assessment of the death penalty, there would be no jurisdictional impediment to our entertaining his request for mandamus relief.

Nov. 14, 2012) (orig. proceeding) (citations omitted).

No one disputes that the State cannot appeal directly the alleged trial court error and thus has no adequate remedy at law. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2012); *see also Armstrong v. State,* 805 S.W.2d 791, 793-94 (Tex. Crim. App. 1991) ("The United States Supreme Court has held that a 'judgment of acquittal, however erroneous, bars further prosecution on any aspect ... and hence bars appellate review of the trial court's error.'") (quoting *Sanabria v. United States,* 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43, 57 (1978)).

> Of course, mandamus "is not a substitute for and cannot be used to perform the office of an appeal." *Bradley v. Miller,* 458 S.W.2d 673, 675 (Tex. Crim. App. 1970). Thus, mandamus may not be used to give the State a right to appeal that was not granted by the Legislature in Article 44.01 of the Texas Code of Criminal Procedure. But the limitations in Article 44.01 on the State's right to appeal are no impediment to the State's use of mandamus to correct judicial action that is clearly contrary to well-settled law, whether that law is derived from a statute, rule, or opinion of a court.

*State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (orig. proceeding).

> An act is "ministerial" if it does not involve the exercise of any discretion:

> [A] "ministerial" act is one which is accomplished without the exercise of discretion or judgment. If there is any discretion or judicial determination attendant to the act, it is not ministerial in nature. Nor is a ministerial act implicated if the trial court must weigh conflicting claims or collateral matters which require legal resolution.

> Examples are helpful in making clear the distinction between ministerial and discretionary acts. Vacating an order is ministerial, as is forwarding the notice of appeal. Issuing process under the

> direction of a judge is ministerial. Also, issuing or executing capias after mandate has issued is ministerial in nature. Last, consideration of a motion properly filed and before the court is ministerial.

*State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex. Crim. App. 1987) (opinion on reh'g) (citations omitted).

> We have also described the ministerial act requirement as a requirement that the relator have "a clear right to the relief sought." *State ex rel. Rodriguez v. Marquez,* 4 S.W.3d 227, 228 (Tex. Crim. App. 1999); *Buntion v. Harmon,* 827 S.W.2d 945, 947 & 947 n. 2 (Tex. Crim. App. 1992); *State ex rel. Wade v. Mays,* 689 S.W.2d 893, 899 (Tex. Crim. App. 1985). The relief sought must be "clear and indisputable" such that its merits are "beyond dispute." *Wade,* 689 S.W.2d at 897. Thus, under the ministerial act/clear legal right requirement, the law must "clearly spell [ ] out the duty to be performed ... with such certainty that nothing is left to the exercise of discretion or judgment." *Id.* at 899 (quoting *Texas Department of Corrections v. Dalehite,* 623 S.W.2d 420, 424 (Tex. Crim. App. 1981), quoting *Forbes v. Houston,* 356 S.W.2d 709 (Tex. Civ. App.—Houston [1st Dist.] 1962)). Even a trial court's ruling on a pure question of law is not subject to writ review where that law was unsettled or uncertain. *Wade,* 689 S.W.2d at 898-900. The act must be "positively commanded and so plainly prescribed" under the law "as to be free from doubt." *Buntion,* 827 S.W.2d at 949.

*State ex rel. Hill v. Court of Appeals for Fifth Dist.,* 34 S.W.3d 924, 927-28 (Tex. Crim. App. 2001) (orig. proceeding) (footnotes omitted).

The Court of Criminal Appeals has summarily stated that

> mandamus may lie to compel a trial court "to rule a certain way" on an issue that is "clear and undisputable" such that its merits are "beyond dispute" or when the "law clearly spells out the duty to be performed with such certainty that nothing is left to the [sic] discretion or judgment" whether that law is derived from "statute, rule, or opinion of a [superior] court." *See Hill,* 34 S.W.3d at 928 n.5.

*State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 198 n.3 (Tex. Crim. App. 1999) (orig. proceeding) (brackets in original).

**The Court's Charge**

In the jury trial of a criminal case, the "judge shall … deliver to the jury … a written charge distinctly setting forth the law applicable to the case; … ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).

> "[A] trial court is required to fully instruct the jury on the law applicable to the case and to apply that law to the facts presented." It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial. This is because "[t]he jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit'." Jury charges which fail to apply the law to the facts adduced at trial are erroneous.

*Gray v. State*, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004) (citations omitted).

Each side may request the inclusion of instructions in the court's charge, and the "court shall give or refuse these charges." TEX. CODE CRIM. PROC. ANN. art. 36.15 (West 2006); *see Gigliobianco v. State,* 179 S.W.3d 136, 144 (Tex. App.—San Antonio 2005) ("In fact, article 36.15 grants the trial court the discretion to deny a charge."), *aff'd,* 210 S.W.3d 637 (Tex. Crim. App. 2006). After receiving objections to his charge, the judge "may make such changes in his main charge as he may deem proper, … ." TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006).

**Law of Parties**

Relator's first complaint concerns the trial court's refusal to include a law-of-parties instruction in the court's charge under Penal Code section 7.02(a)(2), which provides that a "person is criminally responsible for an offense committed by the conduct of another if: … (2) acting with intent to promote or assist the commission of

the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; … ." TEX. PENAL CODE ANN. § 7.02(a)(2). "In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State,* 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). Relator asserts in his petition that the State "has produced sufficient evidence that Falk acted with the intent to promote or assist in the capital murder of Susan Canfield."

Both Relator and Falk have provided us with the court reporter's "rough draft" reporter's record[2] of argument on Falk's motion for directed verdict, where the discussion veered into the law of parties. Respondent plainly stated on the record that he did not see any evidence to support the inclusion of an instruction under section 7.02(a)(2):

> … under 7.02 parties, 7.02(a)(2), I do not see any evidence where he - - this is talking about John Falk, Jr. This is the aiding, abetting part of the driving the vehicle into Canfield or her horse. I don't see any evidence where he solicited, encouraged it, directs it, aids it, or attempts to aid the other person to commit the offense of driving the vehicle into the horse or her. So I don't think you can go under 7.02(a)(2) of the parties statute. The evidence, as I recall it, particularly from Mr. Isaacs - - and there was another witness who was under the shed, I can't remember his name, but they testified, as I recall, that Mr. Falk had already gotten the rifle and that he was on down the road at the time of the collision of this vehicle and Mrs. Canfield, okay?

In an attempt to show that there is sufficient evidence that Falk acted with the intent to promote or assist in the capital murder of Canfield, Relator filed a "rough

---

[2] Relator filed two affidavits of the court reporter in which he states that the transcripts of the motion for directed verdict, the charge conference, and the trial testimony of two witnesses are "rough drafts of [the] testimony taken down during the trial of the State of Texas v. John Ray Falk, Jr."

draft" reporter's record of the testimony of Larry Grissom and Joe Jeffcoat, two of the State's witnesses.[3] Relator did not file a "rough draft" reporter's record of the testimony of "Mr. Isaacs" or the other "witness who was under the shed."

We conclude that Respondent's assessment of the evidence to determine whether it supports the inclusion of an instruction under section 7.02(a)(2) in the court's charge is *not* a ministerial act, but rather is an exercise of Respondent's judgment and judicial determination. *See Hill*, 34 S.W.3d at 927. And to the extent that there is a dispute about the state of the evidence, we may not resolve it in an original mandamus proceeding:

> An appellate court may not deal with disputed matters of fact in an original mandamus proceeding. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990); *Dikeman v. Snell*, 490 S.W.2d 183, 186-87 (Tex. 1973). When the issues before the trial court necessarily require factual determinations, the court of appeals abuses its discretion when it resolves those issues in an original mandamus proceeding. *Brady*, 795 S.W.2d at 716.

*Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex. 1991) (orig. proceeding).

Accordingly, mandamus relief is not available on the trial court's refusal to include a law-of-parties instruction in the court's charge under section 7.02(a)(2).

## Party Conspiracy

Relator's other complaint is that the charge's application paragraph on capital murder (escape) conspiracy under section 7.02(b) erroneously requires the State to prove that Falk should have anticipated the specific manner and means by which Martin killed Canfield, and Relator requests that we enjoin Respondent from requiring

---

[3] Relator also filed his summaries of the testimony of all the trial witnesses, but we decline to consider this document. *See* TEX. R. APP. P. 52.7(a)(2) (requiring the filing of "a properly authenticated transcript of any relevant testimony from any underlying proceeding").

the State to prove that Falk should have anticipated the specific manner and means by which Canfield's death occurred.

Section 7.02(b) of the Penal Code provides that:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b).

The portion of the court's charge at issue provides:

You must determine whether or not the State has proved, beyond a reasonable doubt, four elements. The elements are that:

1. in Walker County, Texas, on or about September 24, 2007, JOHN RAY FALK, JR. joined a conspiracy with JERRY MARTIN to commit the felony offense of Escape; and

2. in an attempt to carry out this conspiracy, JERRY MARTIN intentionally or knowingly caused the death of SUSAN CANFIELD by striking her with a deadly weapon, to wit: a motor vehicle or by striking the horse she was riding with a deadly weapon to wit: a motor vehicle that in its manner of use was capable of causing death or serious bodily injury; and

3. the murder, if any, was committed by JERRY MARTIN in furtherance of the conspiracy, if any, to commit the felony offense of Escape; and

4. JOHN RAY FALK, JR. should have anticipated that JERRY MARTIN would intentionally or knowingly cause the death of SUSAN CANFIELD *by striking her with a deadly weapon, to wit: a motor vehicle or by striking the horse she was riding with a deadly weapon, to wit: a motor vehicle that in its manner of its use was capable of causing death or serious bodily injury during the commission of the felony escape, if any, which was the subject of the alleged conspiracy.* [Emphasis added.]

If you all agree the State has proved, beyond a reasonable doubt, each of the four elements listed above, you must find the Defendant "guilty" of Capital Murder. If you do not all agree, or if you have a reasonable doubt thereof, you will acquit the defendant thereof and next consider whether or not the Defendant is guilty of Felony Murder.[4]

Relator's complaint concerns the fourth element. He asserts that it is clear error to require the State to prove that Falk should have anticipated the specific manner and means by which Martin caused the death of Canfield. In short, Relator contends that the fourth element of the court's charge increases the State's burden of proof and adds a material element to section 7.02(b).

The "rough draft" reporter's record of the parties' objections to the court's charge reflects that, in response to the State's objection to the inclusion of the manner and means in the application paragraph's fourth element, Respondent replied that it was in the State's "pleadings." Respondent's counsel in this proceeding asserts in a reply brief that the indictment alleges in pertinent part that

> on September 24, 2007, John Ray Falk, Jr., did then and there intentionally and knowingly cause the death of an individual, namely Susan Canfield, by striking her with a deadly weapon, to-wit: a motor vehicle and by striking the horse she was riding with a deadly weapon, to-wit: a motor vehicle that in its manner of use or intended use was capable of causing death or serious bodily injury, and the defendant committed the offense while escaping or attempting to escape from a penal institution.[5]

Respondent's counsel concludes: "In view of the manner in which the State chose to

---

[4] The application paragraphs in the court's charge on the lesser-included offenses of felony murder, manslaughter, and criminally negligent homicide all contain the same allegedly erroneous element, but Relator does not complain about them in this original proceeding.

[5] The indictment has not been made a part of our record in this proceeding, but we have no reason to question Respondent's counsel's recitation of its content.

indict Falk coupled with its request for a party conspiracy theory of criminal responsibility, [Respondent] was called upon to craft a charge properly submitting the case to the jury. … [Respondent] has attempted to craft a charge responsive to the allegations of the indictment, the evidence at trial, and [section] 7.02(b)."[6]

> The term "manner and means" refers to the *actus reus* of the crime. *Jefferson v. State*, 189 S.W.3d 305, 316 (Tex. Crim. App. 2006) (Cochran, J., concurring) (noting that manner and means is a "description of how the offense was committed."). … The means of death may refer to the weapon or instrument responsible for the deceased's death. *See Ngo v. State*, 175 S.W.3d 738, 746 n.27 (Tex. Crim. App. 2005). Neither the manner (the *actus reus*) nor the means (the "instrument of death") need to be agreed upon unanimously by a jury. *Id*. (noting that the jury must be unanimous on the gravamen of the offense of murder, which is causing the death of a person, but the jury need not be unanimous on the manner and means); *see also Jefferson*, 189 S.W.3d at 315; *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). The jury need only unanimously agree that appellant caused the death of the complainant. *See Ngo*, 175 S.W.3d at 746.

*Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012); *see also Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2008) ("[J]ury unanimity is required on the essential elements of the offense" but is "generally not required on the alternative modes or means of commission.").

Based on *Sanchez*, Relator contends that if the State may convict a principal of murder without proving the manner and means by which the result of the offense—death—occurred, the State may convict a conspiracy party such as Falk without proving

---

[6] A person may be charged as a principal but, if raised by the evidence, convicted as a party under section 7.02. *See Swope v. State*, 805 S.W.2d 442, 444 (Tex. Crim. App. 1991); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.—Corpus Christi 1997, pet. ref'd) ("Although appellant was not indicted as a party to the offense, the charge permitted the jury to convict appellant if the evidence reflected that he acted as a party rather than the principal actor."); TEX. PENAL CODE ANN. § 7.01 (West 2011); *see also Nichols v. Scott*, 69 F.3d 1255, 1262 n.9 (5th Cir. 1995). And, "it is well-settled that the law of parties need not be pled in the indictment." *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002).

the manner and means by which the death occurred.

Relator also argues that the plain text of section 7.02(b) and applicable case law under section 7.02(b) do not require the State to prove that Falk should have anticipated the manner and means. "[T]he State does not have to prove that the accused intended to shoot or kill the victim or intended that the victim be shot, as long as the evidence established he conspired to commit the robbery and that he 'should have' anticipated the murder as a result of carrying out the conspiracy to commit the robbery." *Davis v. State*, 276 S.W.3d 491, 495 (Tex. App.—Waco 2008, pet. ref'd); *see Ex parte Martinez*, 330 S.W.3d 891, 902 (Tex. Crim. App. 2011) ("In this case, therefore, Applicant may be convicted of capital murder as a party to the offense if the jury found that (1) Applicant conspired with the group to commit robbery, (2) the murder occurred in furtherance of the robbery, and (3) the murder should have been anticipated as a result of carrying out the robbery.") (footnote omitted); *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979).

No party to this proceeding has cited any authority that specifically supports the inclusion in the fourth element that the State must prove that Falk should have anticipated the specific manner and means by which Martin caused the death of Canfield, nor has our research located any. But there is likewise no specific authority that the inclusion of the manner and means in the fourth element of section 7.02(b) conspiracy is erroneous. We thus turn to the applicable standard for mandamus relief and must conclude that this issue is not "well-settled" law such that Respondent has a ministerial duty to not include it in the application paragraph in the court's charge on

capital-murder (escape) conspiracy, despite our reservation below.[7]  *See Tharp*, ___

S.W.3d at ___, 2012 WL 5499867, at *2.  Accordingly, we cannot grant Relator the

requested mandamus relief.

## Conclusion

For the above reasons, we deny Relator's petition for writ of mandamus, and we

vacate our stay of the proceedings in the trial court.


REX D. DAVIS
Justice

Before Justice Davis,
        Justice Lang,[8] and
        Justice Scoggins
Petition denied
Opinion delivered and filed December 12, 2012
Publish
[OT06]

---

[7] While we conclude that the law is not "well settled" on this specific issue, which appears to be one of first impression under Texas law, we are of the strong opinion, based on the authorities cited above, that Texas law does not support including in the fourth element that the State must prove that Falk should have anticipated the specific manner and means by which Martin caused the death of Canfield. Irrespective of the indictment's manner-and-means allegation, no statutory or case law supports its inclusion.  Furthermore, two of the recognized criminal pattern jury charge books do not include it.  *See* Comm. On Pattern Jury Charges—Criminal, State Bar of Tex., *Texas Criminal Pattern Jury Charges (Crimes Against Persons)* § C4.5, at 72-74 (2011); Elizabeth Berry & George Gallagher, 1 *Texas Criminal Jury Charges* § 2:170, at 2-6 to 2-7 (2010).

[8] The Honorable Douglas S. Lang, Justice of the Fifth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 74.003(a) (West 2005).